UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


MARK PFEIFFER, in his capacity
as RECEIVER of the CENTRAL
COVENTRY FIRE DISTRICT,

    Plaintiff,

    v.                            C.A. No. 14-521L

AMERICAN ALTERNATIVE
INSURANCE CORPORATION,

    Defendant.


**MEMORANDUM AND ORDER**

Ronald R. Lagueux, Senior United States District Judge.

    This matter is before the Court on Defendant American
Alternative Insurance Corporation's Motion for Summary Judgment
on Count I of the Complaint filed by Plaintiff Mark Pfeiffer, in
his capacity as Receiver of the Central Coventry Fire District
("the Receiver").  By prior agreement of the parties, Count II
has been dismissed without prejudice.  Count III, which alleges
that Defendant acted in bad faith when it refused to pay or
settle Plaintiff's claim, has been severed and stayed.  Count IV,
for declaratory judgment, is not the subject of the present
summary judgment motion.  The Court, having reviewed the
parties' submissions and heard oral argument, now renders its
decision denying Defendant's motion for partial summary judgment

for the reasons explained below.

<u>**Background**</u>

The Town of Coventry, Rhode Island, is divided into several autonomous districts for the purpose of funding and providing fire-fighting and rescue services to residents.  The Central Coventry Fire District ("the District") is a quasi-municipal corporation with authority to tax the businesses and residents within its geographical area.  Every year the District develops a budget establishing the amount of money needed to fund its fire-fighting operations.  The budget is presented to the District's taxpayers for their approval at a public meeting.  Owners of real property are then billed based on the assessed value of their property, multiplied by a factor (the tax rate) calculated to generate the necessary revenues.  By statute and the District's Charter, the tax bills constitute a lien on the property.[1]

In 2010, the District's Tax Collector, Jeanne Graemiger, made an error and used, as a basis for budgetary calculations, the full value of a commercial property which actually spanned

---

[1] **R.I. Gen. Laws § 44-9-3.  Lien of fire district, lighting district, water district, sewer district and road district.** All taxes, charges, assessments, assessed against any person in any fire district, water district, sewer district, road district and lighting district within this state, pursuant to the act of incorporation of the district, for either real or personal estate, shall constitute a lien upon that person's real estate in the district for the space of three (3) years after the assessment, and, if the real estate is not alienated, then until the taxes or fees are collected. <u>See also</u> R.I. Gen. Laws § 39-15-12.

two districts.  The tax rate was calculated using the erroneous property value, and, consequently, all the tax bills were based on an inaccurate calculation.  With the exception of the single over-valued property, everyone else' tax bills were too low.  The one commercial property, owned by Commerce Park Associates 5, LLC ("Commerce Park"), was overvalued by over $2 million.  When it received the inflated tax bill – nearly $800,000 more than it had been charged in 2009 – Commerce Park visited the Tax Collector's office to complain.  Realizing her error, Graemiger corrected the bill, reducing Commerce Park's bill by $790,505.  She did not disclose her assessment error to anyone in the District.  She did not disclose, or seek the required approval for, the abatement granted to Commerce Park.  Nor did she correct the erroneous property valuation on the tax rolls.  The result was a budget shortfall of approximately $790,505 for the fiscal year 2010-11.[2]

The Treasurer of the District, Thomas Lacolle, was aware of the budget shortfall but made no investigation into its cause.  In addition, Lacolle failed to notify the District's taxpayers of the revenue shortfall for 2010.  Because no correction was made to the underlying property valuation in the tax rolls, the following year, when the budget was calculated and approved by

_____

[2] The budget approved by the District's taxpayers for the year included expenditures of $5,956,335.00. The abatement granted to Commerce Park represented over 1/8 of the total budget.

-3-

the voters and the tax bills sent, the mistake was repeated.
Commerce Park again protested and again Graemiger adjusted its
bill without notice to anyone else in the District.

Had the Commerce Park property been valued properly, the tax
rate set by the District would have been higher.  All the
taxpayers in the District would have been taxed at the higher
rate, so that the taxes generated would cover the required
budget.  Because the tax bills were calculated based on an
erroneous formula for two consecutive years, the District
suffered a total budgetary shortfall of approximately $1.6
million.

Due to the ensuing fiscal troubles, on October 15, 2012, a
special master was appointed by the Rhode Island Superior Court
to oversee the District's finances.  The special master soon
thereafter made a claim to the District's insurer, Defendant
herein, to cover the loss incurred in the two erroneous tax
billing cycles.  That claim was denied, and this lawsuit ensued.

### The insurance policy

Plaintiff makes his claim under the "Faithful Performance of
Duty" endorsement to the policy's "Public Employee Dishonesty
Coverage," which was drafted expressly to cover the District's
Tax Collector and Treasurer.  The endorsement adds to the policy
the following "Covered Cause of Loss:"

> Failure of any "employee" to faithfully perform his or
> her duties as prescribed by law, when such failure has

-4-

as its direct and immediate result a loss of your
covered property.

Under the Public Employee Dishonesty Coverage Form, coverage is
provided for "loss of, and loss from damage to, covered
property," which includes "Money," "securities" and "property
other than money and securities."  Covered property is further
described under "General Conditions," section 12, as property
"that you own or hold; or for which you are legally liable."

### *Duties of Tax Collector and Treasurer*

While "faithful performance" is not defined in the policy,
the duties of the Tax Collector and the Treasurer are set forth
in the District's Charter and by-laws.  Moreover, at least for
the purposes of considering the issues on summary judgment, there
is no dispute between the parties that both the Treasurer and the
Tax Collector made some serious missteps.  Section 9 of the
Charter states that the Treasurer must submit a monthly report to
the Board of Directors, and must, once a year, "fully report the
condition of the treasury of the District, showing receipts and
expenditures of the preceding year" at a public meeting.  The by-
laws specify further that the Treasurer's monthly report to the
Board "show receipts and expenditures to date as compared with
the annual budget, as well as a balance sheet showing cash
assets, liabilities and equities to date."

According to Section 10 of the Charter, the Tax Collector is

-5-

"responsible for the preparation of the tax roll," and must submit monthly reports to the Treasurer and report annually at a public meeting.  The by-laws add the maintenance of "timely and accurate records of payments received and amounts owed for each District taxpayer" and the duty to "present to the Board of Directors for their approval all abatements."

### Standard of Review

When ruling on a motion for summary judgment, the court must look to the record and view all the facts and inferences therefrom in the light most favorable to the nonmoving party. Continental Cas. Co. v. Canadian Univ. Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991).  Once this is done, Fed. R. Civ. P. 56(c) requires that summary judgment be granted if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The ultimate burden of persuasion is on the moving party to show that the undisputed facts entitle it to summary judgment as a matter of law.  Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989).  The moving party must show that "there is an absence of evidence to support" the non-moving party's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If that burden is met, the nonmoving party cannot rest on its pleadings, but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim that is the subject of the summary judgment motion.  Oliver v. Digital

-6-

Equipment Corp., 846 F.2d 103, 105 (1st Cir. 1988).

## Analysis

The nub of the dispute between these parties concerns the interpretation of what constitutes a covered loss under the insurance policy.  Defendant argues that the District was never entitled to collect the $790,505 budget shortfall amount and that, consequently, this money is not property "that you own or hold; or for which you are legally liable" as contemplated by the policy language.  Plaintiff counters that the District was lawfully authorized to collect the budgeted amount needed to run its fire services, and that, but for the failures of the Tax Collector and Treasurer to properly carry out their duties, this amount would have been collected from the District's taxpayers.

### *Construction of insurance policy language*

The Rhode Island Supreme Court has consistently held that insurance policy "terms used must be given their plain and ordinary meaning, and the test to be applied is not what the insurer intended, but what the ordinary reader and purchaser would understand them to mean."  Zarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d 1249, 1259 (R.I. 2003).  If policy language is "ambiguous or capable of more than one reasonable meaning, the policy will be strictly construed in favor of the insured and against the insurer."  Mallane v. Holyoke Mut. Ins. Co. in Salem, 658 A.2d 18, 20 (R.I. 1995).

-7-

In the present case, the question before the Court is
whether or not the District's tax liens can be considered
property that the District 'owned, held or for which it was
legally liable.' The Court holds that, in this context, the tax
liens constitute property which the District owned or for which
it was legally liable.

The District was charged by the taxpayers, by its Charter,
with responsibility for funding and operating its fire-fighting
services.  Furthermore, the District was provided by the
taxpayers with a mechanism to obtain those funds.  That mechanism
required the District to accurately assess the real property in
its geographical limits and to use the assessment to calculate a
tax rate that would generate the required revenue.  The
District's Charter provides as follows:

> Sec. 7. TAXING AUTHORITY - TAX ASSESSOR
>   (a) Said qualified voters at any of their legal
> meetings shall have the power to order such taxes and
> provide for the assessing and collecting of the same on
> the taxable inhabitants and property in said district
> as they shall deem necessary for purchasing fire
> engines, and all other implements and apparatus for the
> extinguishing of fire; for the purchase of land and
> buildings for keeping same; for the purchasing,
> installation, operation and maintenance of a suitable
> alarm system; for making cisterns and reservoirs; for
> the purchase of necessary vehicles and equipment to
> operate and maintain emergency medical services; for
> paying the salaries of district officers and employees.

2006 R.I. Pub. L. chs 405 § 7(a), as amended by 2012 R.I. Pub. L.
chs. 208.  Moreover, the tax bills sent to the District's
property owners constitute a lien on the real estate, due and

-8-

owing until collected (or the property is alienated).  R.I. Gen.
Laws §§ 44-9-3 and 39-15-12.

The Defendant, in denying the Receiver's claim,
characterized the District's loss as a speculative projection or,
alternatively, monies not due the District because they were
based on a mistaken overvaluation of Commerce Park's property.
The notion that the District is not due the money billed to
Commerce Park indicates a fundamental misconstruction of the
Receiver's claim.  The Receiver is not claiming as a loss the
money mistakenly billed to Commerce Park; he is instead claiming
as a loss all the money that should have been, but was not,
levied against the other taxpayers of the District.  Had those
bills been sent properly, the amount identified in the District's
budget would have been subject to the District's lien.  The
actions of the Tax Collector and Treasurer directly caused the
District's loss. See Scirex Corp. v. Federal Ins. Co., 313 F.3d
841, 850 (3rd Cir. 2002).

Furthermore, the loss claimed by the Receiver is not a
matter of speculation or unearned projected income.  Instead the
claimed loss comprises monies that the District was entitled to
by operation of law, and monies for which they are legally
liable.  Assuming the facts provided by Plaintiff, the Court
holds that the District's lost tax revenue is a legally
recoverable property interest, as a matter of statute.

-9-

## **Conclusion**

For the reasons set forth above, the Court denies Defendant's Motion for Summary Judgment on Count I of Plaintiff's complaint.  The Court, at this juncture, can identify no material disputed facts between the parties; however, Plaintiff has made no cross motion for summary judgment.  Furthermore, Count IV, for declaratory judgment, remains to be litigated or otherwise resolved.  A status conference will be held in the next thirty days in order to review the terms of the Court's pretrial order of April 15, 2015 (doc. #16).  No judgment shall enter in this case until all claims are resolved.  It is so ordered.

_____
Ronald R. Lagueux
Senior United States District Judge
November  12  , 2015